**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

TIG INSURANCE CO.,

Plaintiff,

v.

TYCO INTERNATIONAL, LTD., GRINNELL CORPORATION, and THE BROOKLYN HOSPITAL CENTER, f/k/a THE BROOKLYN HOSPITAL – CALEDONIAN HOSPITAL,

Defendants.

NO. 3:08-cv-1584

(JUDGE CAPUTO)

**MEMORANDUM**

Presently before the Court is Defendant Brooklyn Hospital Center's ("BHC") motion to dismiss for lack of jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. 6.) Plaintiff TIG Insurance, Co. ("TIG") brings a claim for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, against BHC, Tyco International, Ltd. ("Tyco"), and Tyco's subsidiary, Grinnell Corporation ("Grinnell"). For the reasons stated below, the Court will deny BHC's motion.

**BACKGROUND**

This case arises out of fire that occurred on May 5, 1997, destroying business records and other property housed in document storage warehouses owned by Diversified Records & Services, Inc. ("Diversified") in Luzerne County, Pennsylvania. (Compl. ¶ 12, Doc. 1.) At the time, BHC had utilized Diversified for storage of its medical and business records since May 1991. (Doc. 1, Ex. 2 ¶¶ 3-4.) Diversified contracted with Grinnell to install sprinkler systems in its warehouses, including those housing BHC's record. (*Id*. ¶¶ 9-10.) The May

5, 1997 fire overwhelmed the sprinkler system installed by Grinnell, spreading through several warehouses and burning a significant amount of BHC records. (*Id.* ¶¶ 11-13.)

BHC initiated litigation against Diversified in 1999 in the Supreme Court of the State of New York, in which Diversified later joined Grinnell. (*Id*. ¶¶ 14-17). In 2002, The New York state court allowed BHC to amend its complaint to add Grinnell as a Defendant, but also granted Grinnell's motion to dismiss on forum non conveniens grounds. (*Id*. ¶ 20.) The suit was transferred to the Luzerne County Court of Common Pleas and docketed there in 2003, where it was pending at the time of briefing this motion and was scheduled to go to trial in October 2008 (the "Underlying Action"). (Doc. 1, Ex. 2; Def.'s Br. in Supp. 2-3, Doc. 6.)

The May 5, 1997, fire also resulted in a variety of other suits, including seventeen (17) suits consolidated to *In re Diversified Litigation*, No. 2953-C-1999, in the Luzerne County Court of Common Pleas. (Doc. 1, Ex. 7.) The *In re Diversified* case resulted in a verdict in favor of the plaintiff with the finding that Diversified was sixty percent (60%) liable and Grinnell was forty percent (40%) liable. (Doc. 1, Ex. 2 ¶ 21.) Consequently, in its case with BHC, Grinnell has agreed by stipulation to accept liability and proceed only on the question of BHC's damages. (*Id*. ¶ 22.)

The plaintiff in the present action, TIG, issued to Tyco an "Excess Umbrella [Insurance] Policy," for the period between July 1, 1997 and July 1, 1998, with limits of thirty million dollars ($30,000,000) in excess of underlying insurance for each qualifying "occurrence" under the policy. (Compl. ¶ 8.) Grinnell is insured under this policy. (*Id*. ¶ 9.) The policy potentially provides coverage for events occurring prior to July 1, 1997, under a type of policy endorsement commonly called "nose coverage." (*Id*. ¶ 13.) However, by its

terms, the nose coverage endorsement at issue here does not apply to "[a]ny claims resulting from an occurrence of which the [insured] had actual or constructive notice prior to the commencement of coverage under this policy." (*Id.* ¶ 14.) TIG alleges that BHC's current demand in the Underlying Action would exhaust Grinnell's underlying insurance. (*Id.* ¶ 16.) It further alleges that the Defendants to the instant action contend TIG may be obligated to indemnify the insured for the excess losses. (*Id.* ¶ 17.) TIG therefore seeks a declaration that the above-mentioned policy exclusion precludes it from any obligation to provide coverage for Defendants with respect to the Underlying Action. (*Id.* ¶ 26.)

TIG filed its complaint for relief under the Declaratory Judgment Act (Doc. 1) on May 14, 2008 in the U.S. District Court for the Eastern District of Pennsylvania. The parties stipulated to the suit's transfer to the U.S. District Court for the Middle District of Pennsylvania on August 12, 2008. (Doc. 5.) Directly thereafter, BHC filed the present motion to dismiss. (Doc. 6) While this Court has jurisdiction over TIG's claim pursuant to 28 U.S.C. § 1332 (diversity jurisdiction),[1] BHC argues the Court should decline to exercise its jurisdiction in light of the pending state proceedings. This motion has been fully briefed and is ripe for disposition.

## LEGAL STANDARD

The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201 and 2202, provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States ... may declare the rights and other legal relations of any interested party seeking such

[1] TIG alleges complete diversity of parties and an amount in controversy in excess of $75,000, exclusive of costs and interests. (Compl. ¶¶ 2, 4-7.)

declaration, whether or not further relief is or could be sought."

At the outset, the parties dispute the applicable standard to appropriately decline or exercise jurisdiction. TIG applies the test announced in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976), holding that, because federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred on them by Congress, they may decline jurisdiction in favor of parallel state proceedings only in "exceptional circumstances." BHC applies the more permissive standard announced in *Brillhart v. Excess Ins. Co. Of America*, 316 U.S. 491, 494 (1942), holding that the jurisdiction conferred by the DJA is discretionary. "*Brillhart* makes clear that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).

The U.S. Supreme Court and the U.S. Court of Appeals for the Third Circuit have both confirmed that *Colorado River* does not undermine the jurisdictional discretion afforded district courts by the DJA. *Id.* at 287; *Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213, 1223 (3d Cir. 1989). Rejecting the *Colorado River* "exceptional circumstances" test, the *Wilton* court reasoned that the unique nature of the DJA justifies greater discretion. *Wilton*, 515 U.S. at 286. "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yield to considerations of practicality and wise judicial administration." *Id.* at 288. Thus, the Court applies the discretionary *Brillhart* standard in determining whether or not exercise jurisdiction in this case.

## DISCUSSION

BHC argues the Court should decline jurisdiction because the Underlying Action has been in state court since 2003 and related cases have already worked through the Pennsylvania state court system. TIG counters that the Underlying Action shares no common legal or factual issues with the instant action and the latter involves a simple application of settled state law to an isolated issue of insurance coverage. For the reasons stated below, the Court agrees with TIG and will deny the motion to dismiss.

In *State Auto Ins. Cos. v. Summy*, 234 F.3d 131 (3d Cir. 2000), the Third Circuit Court of Appeals provided guidance for a district court's exercise of discretion under the Declaratory Judgement Act where there exist related state court proceedings.[2] The *Summy* court first pointed to a critical central question articulated in *Brillhart*, namely "whether the questions in controversy between the parties to the federal suit ... can better be settled in the proceeding pending in the state court." *Id.* at 133 (quoting *Brillhart*, 316 U.S. at 495) (internal quotation marks omitted). As the *Brillhart* court explained, this requires some inquiry into the scope of the state court proceedings, including "whether the claims of all parties in interest

---

[2] The state court proceedings at issue in *Summy* were parallel declaratory judgment proceedings, meaning they involved the same parties and claims. However, district courts in the Third Circuit have applied the considerations and guidance articulated in *Summy* outside the context of parallel proceedings. *See, e.g.*, *Essex Ins. Co. v. Gilbert Weinberger, Inc.*, No. 07-cv-0180, 2007 U.S. Dist. LEXIS 7713, at *6 n.2 (M.D. Pa. Feb. 2, 2007) (applying *Summy* to related, but not parallel state proceeding). In *State Farm Mut. Auto Ins. Co. v. LaVanture,* the court reasoned that *Summy's* logic applies in all cases where a district court has discretion to hear a declaratory judgment action. No. 05-cv-2523, 2006 U.S. Dist. LEXIS 30916, at *4 (M.D. Pa. May 16, 2006).

[to the federal proceeding] can satisfactorily be adjudicated in that proceeding." *Brillhart*, 316 U.S. at 495.

The *Summy* court then noted that a district court's discretion to decline jurisdiction is limited in circumstances presenting issues of federal statutory interpretation, the government's choice of a federal forum, an issue of sovereign immunity, or inadequacy of the state proceeding. *Summy,* 234 F.3d at 134. In such cases, a federal interest in deciding the federal issue is promoted by deciding the case in the district court. *See id*. at 136 (presence of a federal question creates a federal interest in adjudication).

Where a district court must decide whether to hear a declaratory judgment action involving insurance coverage issues, the Third Circuit Court of Appeals has suggested the following relevant considerations:

> 1. A general policy of restraint when the same issues are pending in a state court;
>
> 2. An inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion;
>
> 3. Avoidance of duplicative litigation.

*Id.* at 134 (quoting *United States v. Pa. Dep't of Envtl. Resources,* 923 F.2d 1071, 1075-76 (3d Cir. 1991)).

The *Summy* court gave several other factors (somewhat overlapping with the above) that a district court should consider in determining whether to exercise jurisdiction under the DJA. First, a court should be hesitant in exercising jurisdiction where the state law involved is close or unsettled. *Id.* at 135. In declaratory judgment cases, district courts have the ability to consider a state's interest in adjudicating the issue, and should thus be mindful of

their limited role of predicting, not establishing state law. *Id*. at 135. Second, the court cautioned that, in maintaining the proper relationship between federal and state courts, there may be even less reason to resort to a federal forum where state law is firmly established. *Id.* at 136. Finally, "a federal court should also decline to exercise its discretionary jurisdiction when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation." *Id*. at 135.

**I. The Underlying Action**

As *Brillhart* and the Third Circuit Court of Appeals both counsel, a district court should hesitate to exercise jurisdiction where the issues in controversy can be readily resolved in state court proceedings. This requires an examination of the scope of the related state court proceeding. Comparing the instant action to the Underlying Action, there is little, if any, overlap in parties, issues, or facts. Consequently, the Court cannot conclude that "the claims of all parties in interest [to the federal action] can satisfactorily be adjudicated in [the underlying] proceeding." *Brillhart*, 316 U.S. at 495.

First, TIG is not a party to the underlying action by BHC against Grinnell. Nor does either party allege that TIG is defending the insured in the underlying suit, alleviating any concern regarding the inherent conflict between the duty to defend and the interest in applying a policy exclusion. Second, there are no overlapping legal issues between the two cases. TIG's declaratory judgment action raises an issue of insurance policy interpretation whereas the Underlying Action is concerned only with BHC's damages resulting from Grinnell's tort liability. Finally, the focus of the factual inquiry relevant to each case is very different. The Underlying Action requires facts relevant to the valuation of BHC's damages

caused by the fire. The instant action requires facts relevant to show the insured had "notice" of an "occurrence"—within the meaning of the policy—prior to July 1, 1997. That the the Underlying Action and related actions stemming from the fire have proceeded through the Pennsylvania state court system does not necessarily belie a particular familiarity with facts relevant to Grinnell and/or Tyco's knowledge *after* the fire occurred or whether it constitutes an "occurrence" under the policy.

There is no indication on the current record that the issue presented here is currently before the state court judge in the Underlying Action or that the state court is better situated to adjudicate the present parties' rights. "That the issues raised here might be resolved in some yet-to be filed action brought in state court – either another action for declaratory relief or an action for indemnity after entry of judgment against [the insurer] in the underlying tort suit[ ] – is not alone sufficient to justify dismissal of this action." *Nautilus Ins. Co. v. Winchester Homes*, 15 F.3d 371, 379 (4th Cir. 1994).

**II. State and/or Federal Interests**

There is no federal question presented in this case to limit the Court's discretion to decline jurisdiction. The insurance coverage issue is a matter of purely state law. Pennsylvania has a well-developed body of law on the interpretation of insurance policies. *See, e.g., Madison Constr. Co. v. Harleysville Mut. Ins. Co*, 735 A.2d 100, 106 (Pa. 1999) (discussing contract interpretation where insurer relies on policy exclusion to deny coverage). TIG's claim thus requires the application of settled state law.

The Court is mindful of the *Summy*'s guidance that, where state law is firmly established, there may be little reason to resort to a federal forum. *Summy*, 234 F.3d at 136.

The *Summy* court's concern, however, is directed at circumstances where a state court is poised to apply its law in a related proceeding and the federal court has no interest of its own in rendering the same application. In such a case—where there is no federal question, state law is settled, and the issue is before the state court—there is little purpose other than a party's preference of forum to bring the same matter before a federal court for declaratory relief. An insurer's preference, moreover, "has no special call on the federal forum." *Id.* In those circumstances, maintaining the proper relationship between federal and state courts counsels abstention by the federal forum.

As discussed above, those are not the circumstances of the instant case. There is no indication that the TIG insurance coverage question is before the state court in the damages-only tort action between BHC and Grinnell. The Court does not disrupt the state-federal balance by entertaining a claim that may be the subject of a future state court action.

**III. Judicial Economy / Duplicative Litigation**

For the reasons discussed above, there is no indication on the record that hearing TIG's declaratory judgment action will duplicate the work of the state court or that judicial economy would be better served by declining jurisdiction. There appears little, if any, overlap in parties, issues, and facts. There is no indication that a parallel declaratory judgment or indemnification action arising from the Underlying Action is presently before the state court.

## CONCLUSION

While BHC argues that the Court should decline jurisdiction to entertain this state law insurance coverage issue because the underlying tort suit is in state court, the existence of

a related proceeding with no other factors counseling against jurisdiction is not sufficient to support BHC's position. "[T]he federal appellate courts have uniformly recognized that the mere pendency of a related tort action against the insured in state court does not in and of itself require a federal court to refuse an insurer's request for declaratory relief on coverage issues." *Nautilus*, 15 F.3d at 376 (collecting cases). Accordingly, the Court will deny BHC's motion to dismiss.

An appropriate Order follows.

January 21, 2009
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TIG INSURANCE CO.,<br><br>Plaintiff,<br><br>v.<br><br>TYCO INTERNATIONAL, LTD., GRINNELL CORPORATION, and THE BROOKLYN HOSPITAL CENTER, f/k/a THE BROOKLYN HOSPITAL – CALEDONIAN HOSPITAL,<br><br>Defendant. | NO. 3:08-cv-1584<br><br>(JUDGE CAPUTO) |

**ORDER**

**NOW**, this 21st day of January, 2009, **IT IS HEREBY ORDERED** that Defendant Brooklyn Hospital Center's Motion to Dismiss is **DENIED.** (Doc. 6.)

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge