# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIG INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>TYCO INTERNATIONAL, LTD., GRINNELL CORPORATION, and THE BROOKLYN HOSPITAL CENTER, F/K/A THE BROOKLYN HOSPITAL - CALEDONIAN HOSPITAL,<br><br>    Defendants. | CIVIL ACTION NO. 3:08-CV-1584<br><br>(JUDGE CAPUTO) |

## MEMORANDUM

Grinnell seeks claims and underwriting manuals, information regarding reinsurance agreements and reserve information from TIG Insurance Co. Grinnell argues that all of these documents will provide insight into the meaning of the policy's prior acts endorsement which bars from coverage "claims resulting from an occurrence of which the Named Insured had actual or constructive notice prior to the commencement of the policy."

The dispute in this case involves the interpretation of an excess insurance policy issued by TIG and whether the policy covers Grinnell's payment in settlement of a lawsuit, *viz The Brooklyn Hospital Center v. Grinnell Corporation*, Case No. 2495-C (Court of Common Pleas of Luzerne County, Pennsylvania) (the "Underlying Action"). The Underlying Action arose out of a fire in a warehouse in May, 1997, for which Grinnell was blamed because of a faulty sprinkler system. The policy covers the period July 1, 1997 to July 1, 1998. An endorsement to the policy extends coverage to "prior acts" that occurred before the policy's inception but the same endorsement also excludes "any claims of which the

Named Insured had actual or constructive notice prior to the commencement of coverage under this policy." The fire took place during the "prior acts" period. TIG contends that coverage is barred because Grinnell had notice of the fire before the commencement of the policy. Grinnell contends this is wrong and that the exclusion must be construed to apply only if the insured (Grinnell) had notice of a loss in excess of the policy's attachment point, i.e. $60 Million, prior to the commencement of the policy.

1. **Claims and Underwriting Manuals**

Grinnell contends that these documents will assist in the determination of how TIG interprets its policy. Grinnell asserts that extrinsic evidence such as the manuals is appropriate because the policy language is ambiguous, and that the claims and underwriting manuals will shed light on ambiguities.

The contract is governed by Pennsylvania law. "Pennsylvania law on contract interpretation and ambiguity is somewhat complicated; while the broad principles are clear, it is not a seamless web . . .." *Bohler-Uddeholm America, Inc. v. Ellwood Group*, 247 F.2d 79, 92 (3d Cir. 2001).

To determine whether ambiguity exists, the court may consider "the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir. 1980). Thus, extrinsic evidence may be particularly useful for establishing the existence of an ambiguity.

Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense–including

2

the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." The manuals are not privileged and they are relevant.

Here, whether an exclusion applies is relevant to Grinnell's counterclaim, and the claims and underwriting manuals are relevant to determining whether an ambiguity exists, and if so, they may aid in its resolution. Thus, Grinnell's motion to order the disclosure of the claims and underwriting manuals will be granted.

2. **Information Regarding Reinsurance Agreements**

Grinnell again proffers that this information may aid in the interpretation of the policy language. This information is more remote than the manuals in its efficacy at resolving the meaning of policy language. While the manuals may show what TIG thinks a policy term means, its arrangements with other insurers may or may not provide insight into the meaning of the terms of the policy between TIG and Grinnell. Moreover, and more importantly, what TIG and its reinsurers may agree a term means as between them is not, *ipso facto,* probative of what that term means in the subject policy. Just because TIG may be overly inclusive in what it reinsures against does not mean the coverage with its insured is co-extensive with the coverage TIG secures from its reinsurers.

The request will be denied.

3. **Reserve Information**

Grinnell seeks reserve information on the basis that it may show how TIG interprets the policy. Reserve amounts are generally required by state law to cover potential liability. The fact that in setting the reserve amount, a company such as TIG allows for an

3

interpretation of its policy which has not been determined and with which it does not agree is of little value in determining the meaning of a policy term or terms. It is simply too speculative to provide good cause to discover it.

The request will be denied.

4. **TIG's Request for Grinnell's Litigation File**

TIG seeks discovery of Grinnell's file in the Underlying Action on the basis that they have a community of interests concerning the Underlying Action. Grinnell resists asserting that the policy language does not require that it produce those files and that the law does not require that it produce those files. It claims it can maintain its privilege *vis a vis* TIG. Here, unlike *Southeastern Pennsylvania Trans. Auth. v. Transit Cas. Co.*, 55 F.R.D. 553 (E.D. Pa. 1972), TIG had notice of the claims (the Underlying Action) against Grinnell and denied coverage. Grinnell defended itself and ultimately settled. There was no participation by TIG because it denied coverage and a defense. It is difficult to find a common interest under these facts.

The request will be denied.

An appropriate Order follows.


Date: November 12, 2010                /s/ A. Richard Caputo
                                                          A. Richard Caputo
                                                          United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TIG INSURANCE COMPANY, | |
| Plaintiff, | CIVIL ACTION NO. 3:08-CV-1584 |
| v. | (JUDGE CAPUTO) |
| TYCO INTERNATIONAL, LTD., GRINNELL CORPORATION, and THE BROOKLYN HOSPITAL CENTER, F/K/A THE BROOKLYN HOSPITAL - CALEDONIAN HOSPITAL, | |
| Defendants. | |

## ORDER

**NOW,** this 12th day of November, 2010, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED** as follows:

1. Defendant's request for Claims and Underwriting Manuals is **GRANTED**.

2. Defendant's request for TIG's Reinsurance Agreements and Information is **DENIED.**

3. Defendant's request for TIG's Reserve Information is **DENIED**.

4. Plaintiff's request for Defendant's file in the Underlying Action is **DENIED.**

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge