# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIG INSURANCE COMPANY, | |
| Plaintiff, | CIVIL ACTION NO. 3:08-CV-1584 |
| v. | (JUDGE CAPUTO) |
| TYCO INTERNATIONAL LTD., GRINNELL CORPORATION, and THE BROOKLYN HOSPITAL CENTER, F/K/A THE BROOKLYN HOSPITAL - CALEDONIAN HOSPITAL, | |
| Defendants. | |

## MEMORANDUM

Presently before the Court is the Motion for Clarification of the Court's January 23, 2013 Order (Doc. 187) filed by Plaintiff TIG Insurance Company ("TIG"). (Doc. 188.) On January 23, 2013, the Court entered an Order that, *inter alia*, denied a summary judgment motion filed by Defendant SimplexGrinnell LP ("Grinnell") (Doc. 115) and granted TIG's Motion for Summary Judgment on Exclusion 7 (Doc. 122). TIG now moves the Court to clarify its Order to include the relief sought in Counts I and II of its Amended Complaint. (Doc. 188 at ¶¶ 4, 9.) Specifically, TIG seeks a declaration that it owed no duty to idemnify Grinnell for the Brooklyn Hospital settlement and reimbursement of the $7,840,699.69 it paid in connection with the settlement, along with applicable interest, pursuant to the parties' 2008 Funding Agreement. (*Id.* at ¶¶ 4–9.) The parties agree that the Court's judgment established that TIG has no duty to idemnify Grinnell for the Brooklyn Hospital settlement and is entitled to reimbursement in the amount of $7,840,699.69, pre-judgment interest in the amount of $1,637,954.49, and post-judgment interest. (Doc. 189 at 2; Doc. 190 at 5; Doc. 193 at 2.) They disagree on what rate applies to the award of post-judgment interest. For the reasons below, TIG's motion will be granted in part and denied in part.

## BACKGROUND

This action stems from a multi-day fire in May 1997 at a large document storage

warehouse complex in West Pittston, Pennsylvania, owned by Diversified Records Services, Inc. ("Diversified"). In 1995, Grinnell, a subsidiary of Tyco International Ltd. ("Tyco") that installs, manufactures, and supplies automatic fire sprinkler systems, contracted to install fire protection sprinkler systems at the Diversified complex. A fire started at the Diversified complex on May 5, 1997 that lasted several days and destroyed three large warehouses and millions of corporate documents. At the time of the fire, Grinnell's sprinkler systems were installed but were not turned on in one of the warehouses because the accompanying alarm system had not yet been connected. Grinnell knew of the fire the day it happened. Soon afterward, an adjuster for Grinnell's third-party administrator reported to Grinnell's outside counsel that a conservative estimate of damage caused by the fire was about $8 million, a figure which was not altered in his final report of December 1997.

In May 1997, Tyco negotiated with insurers for its general liability program for the 1997–98 policy year. TIG issued Grinnell an excess liability policy, Policy No. XLX 914 12 65, for the period July 1, 1997 to July 1, 1998, with limits of $30 million excess of $90 million (the "TIG Policy"). The TIG Policy provided coverage for losses arising out of occurrences taking place during the policy period, but also included an "Extended Reporting Provision for Occurrences Prior to this Policy Period" endorsement ("ERP"). The ERP provided coverage for "claims[1] first made" after July 1, 1997 "resulting from occurrence(s) that took place during the period from 6/1/1993 to 7/1/1997" subject otherwise to the exclusions and conditions of the policy. It also contained seven exclusions, two of which are relevant to this case. Exclusion 7 excludes from coverage "[a]ny claims resulting from an occurrence[2] of

---

[1] The ERP defines a "claim" as a "written notice received by the Named Insured [Tyco and its subsidiaries] of an intention to hold the Named Insured responsible for any occurrence covered by this policy, and shall include the service of suit or institution of arbitration proceedings against the Named Insured."

[2] The TIG Policy incorporates the definition of "occurrence" used in the underlying AIG umbrella policy, which defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in Bodily Injury or Property Damage neither expected nor anticipated from the standpoint of the Insured." (Pl.'s SMF at ¶¶ 54–56.)

which the Named Insured had actual or constructive notice prior to the commencement of coverage under this policy."

In 1998 and 1999, various entities that stored documents with Diversified sued Diversified and Grinnell in the Court of Common Pleas of Luzerne County, Pennsylvania for losses associated with the fire (the "Underlying Actions"). Diversified and its property insurer also sued Grinnell in the same court for damage to the warehouse complex and business interruption costs (the "Diversified Action"). The Underlying Actions and the Diversified Action were consolidated into a single action (the "Consolidated Action" and the "Consolidated Action Suits"). A two-phase trial was held for the Consolidated Action, with the liability trial for two lead cases, brought by First Union Corporation ("First Union") and Mobil Oil Corporation ("Mobil"), beginning in September 2002. During the trial, Diversified and Grinnell entered into an agreement whereby Grinnell became responsible for all liability. On October 18, 2002, the jury returned a liability verdict, assessing 60% fault to Diversified and 40% fault to Grinnell. The jury awarded $20,534,963 in damages to First Union on December 13, 2002, and $20,750,653 to Mobil on January 17, 2003. After both judgments were affirmed by the Superior Court of Pennsylvania in 2005, Grinnell's primary and first level excess insurers for the 1996–97 policy year paid judgments of $32,979,909.57 to First Union and $31,631,905.00 to Mobil on August 15, 2006. Grinnell's insurers for the 1996–97 policy year paid approximately $67.4 million in settling or resolving the Consolidated Action Suits. Following these payments, the remaining amount left within the first $60 million in coverage for the 1996–97 insurance policies was approximately $9.7 million.

In 1999, the Brooklyn Hospital Center ("Brooklyn Hospital") sued Diversified in New York state court for damages resulting from the destruction of its documents in the fire ("Brooklyn Hospital claim"). Grinnell was added as a third-party defendant to the complaint in 2000. The suit was transferred to the Court of Common Pleas of Luzerne County and docketed there in 2003, but was not joined in the Consolidated Action. Following the resolution of the Consolidated Action Suits, the Brooklyn Hospital claim was the only remaining claim arising from the Fire. Pursuant to a stipulation that they entered into on

3

October 4, 2002, Brooklyn Hospital and Grinnell agreed to accept the liability verdict in the First Union and Mobil trials. The stipulation also provided that if Grinnell was found liable in those cases, it would accept complete responsibility for any damage verdict rendered in Brooklyn Hospital's favor in a later proceeding.

On February 2, 2007, Brooklyn Hospital filed a subsequent complaint against Grinnell to recover damages it allegedly sustained due to the fire. TIG was notified of the Brooklyn Hospital claim on August 14, 2007. Grinnell asked TIG to participate in resolving the claim on September 26, 2007, but TIG reserved its rights on January 30, 2008. TIG sent a supplemental reservation of rights letter on March 28, 2008, stating that it was reserving its rights based on Exclusion 7 of the ERP. On May 14, 2008, TIG commenced this diversity action under 28 U.S.C. § 1332, seeking a determination of its rights or obligations owed under the TIG Policy.

On October 1, 2008, the Brooklyn Hospital claim settled in principle for $20.5 million. Grinnell's primary and first layer excess insurers agreed to pay the first $9.1 million of the settlement, and Grinnell and TIG agreed to pay the remainder. Pursuant to the parties' Funding Agreement, Grinnell paid $3,563,954.40 and TIG paid $7,840,699.69, with each party's portion being subject to the resolution of the coverage dispute in this action. (Doc. 189, Ex. A at ¶¶ 1, 5.)

In Count I of its Amended Complaint, TIG seeks a judgment declaring that it has no duty to indemnify Grinnell for its loss in the Brooklyn Hospital settlement. Count II requests the Court to order Grinnell to reimburse TIG for its portion of the settlement payment, plus interest. (Doc. 61 at 5–6.) Grinnell raises two counterclaims against TIG. Count I seeks for the Court to declare that Grinnell's loss in the Brooklyn Hospital settlement is covered under the TIG Policy, and Count II requests the Court to order TIG to reimburse Grinnell's portion of the settlement payment, plus interest, pursuant to TIG's breach of contract. (Doc. 62 at 8–9.) On June 11, 2012, the parties filed cross-motions for summary judgment. Oral argument was held on these motions on October 24, 2012. On January 23, 2013, the Court entered a Memorandum (Doc. 186) and Order (Doc. 187) that, *inter alia*, denied Grinnell's

Motion for Summary Judgment (Doc. 115) and granted TIG's Motion for Summary Judgment on Exclusion 7 (Doc. 122). The Court entered judgment in favor of TIG and against Grinnell on Counts I and II of TIG's Amended Complaint and Counts I and II of Grinnell's Counterclaim. (Doc. 187 at ¶¶ 5–6.)

On February 19, 2013, TIG filed its Motion for Clarification of the Court's January 23, 2013 Order. (Doc. 188.) TIG asks the Court to clarify its Order to include the relief specific sought in Counts I and II of its Amended Complaint: (1) a declaration that it owed no duty to idemnify Grinnell for the Brooklyn Hospital settlement and (2) reimbursement of the $7,840,699.69 it paid in the settlement, along with applicable pre-judgment and post-judgment interest, pursuant to the parties' 2008 Funding Agreement. (*Id.* at ¶¶ 4–9.) The motion has been fully briefed and is ripe for the Court's disposition.

## **DISCUSSION**

### I. Legal Standard

Federal Rule of Civil Procedure 60(a) allows a court to "correct a clerical mistake or mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). Rule 60(a) can only be invoked to correct errors that are "mechanical in nature, apparent on the record, and not involving an error of substantive judgment." *Pfizer Inc. v. Uprichard*, 422 F.3d 124, 130 (3d Cir. 2005) (citing *Mack Trucks, Inc. v. Int'l Union, UAW*, 856 F.2d 579, 594 (3d Cir. 1981)). "The judgment may be corrected [under Rule 60(a)] by including interest if this is a matter of right . . . ." 11 Wright, Miller & Kane, *Federal Practice & Procedure* § 2854 (citing *Glick v. White Motor Co.*, 458 F.2d 1287 (3d Cir. 1972)). "'[T]he relevant test for the applicability of Rule 60(a) is whether the change affects substantive rights of the parties and is therefore beyond the scope of Rule 60(a) or is instead a clerical error, a copying or computational mistake, which is correctable under the Rule.'" *Pfizer*, 422 F.3d at 130 (citing *In re W. Tex. Mktg.*, 12 F.3d 497, 504 (5th Cir. 1994)).

### II. **TIG's Motion for Clarification of the Court's January 23, 2013 Order (Doc. 188)**

TIG asks the Court to clarify its Order to include the relief sought in Counts I and

II of the Amended Complaint. (Doc. 188 at ¶¶ 4, 9.) Specifically, TIG seeks (1) a declaration that it owed no duty to idemnify Grinnell for the Brooklyn Hospital settlement and (2) reimbursement of the $7,840,699.69 it paid in connection with the settlement, along with applicable pre-judgment and post-judgment interest, pursuant to the parties' 2008 Funding Agreement. (*Id.* at ¶¶ 4–9.) The parties agree that the Court's judgment established that TIG has no duty to idemnify Grinnell for the Brooklyn Hospital settlement and is entitled to reimbursement in the amount of $7,840,699.69, pre-judgment interest in the amount of $1,637,954.49, and post-judgment interest. (Doc. 189 at 2; Doc. 190 at 5; Doc. 193 at 2.) However, they disagree on what rate applies to the award of post-judgment interest.

### A. Pre-Judgment Interest

In diversity cases, state law determines the award of pre-judgment interest. *Jarvis v. Johnson*, 668 F.2d 740, 746–47 (3d Cir. 1982). Under Pennsylvania law, pre-judgment interest is awardable as a matter of right in contract actions. *Fernandez v. Levin*, 548 A.2d 1191, 1193 (Pa. 1988); *Kaiser v. Old Republic Ins. Co.*, 741 A.2d 748, 755 (Pa. Super. 1999). Therefore, the Court may correct its January 23, 2013 Order by including pre-judgment interest. *See* 11 Wright, Miller & Kane, *Federal Practice & Procedure* § 2854 (citing *Glick v. White Motor Co.*, 458 F.2d 1287 (3d Cir. 1972)).

The parties agree that, pursuant to the Court's January 23, 2012 Order and the Funding Agreement,[3] TIG is entitled to $1,637,954.49 in pre-judgment interest. (Doc. 189 at 2; Doc. 190 at 5; Doc. 193 at 2.) (Doc. 191 at ¶ 4.) Accordingly, the Court will

---

[3] Paragraph 6 of the Funding Agreement provides: "Nothing in this Agreement shall preclude or provide a basis for any Party to claim interest on amounts indicated in paragraph [5](a) and (b), except that any interest otherwise recoverable shall begin to run on the date of payment at 5% per annum (simple)." (Doc. 189, Ex. A at ¶ 6.) Paragraph 5(a) states that if Grinnell establishes that it is entitled to coverage under the TIG Policy for the Brooklyn Hospital claim, TIG will reimburse the $3,563,954.40 paid by Grinnell as part of the Brooklyn Hospital settlement. (*Id.* at ¶ 5(a).) Paragraph 5(b) provides that if Grinnell fails to establish that it is entitled to coverage, it will reimburse TIG for the $7,840,699.69 paid by TIG as part of the settlement. (*Id.* at ¶ 5(b).)

6

award TIG $1,637,954.49 in pre-judgment interest.

### B. Post-Judgment Interest

Post-judgment interest is statutorily mandated for all judgments in federal court. 28 U.S.C. § 1961; *Dunn v. HOVIC*, 13 F.3d 58, 62 (3d Cir. 1993); *Pierce Assocs., Inc. v. The Nemours Found.*, 865 F.2d 530, 548 (3d Cir. 1988). The statute provides that:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.[4]

28 U.S.C. § 1961(a). Therefore, the Court may correct its January 23, 2013 Order by including post-judgment interest. *See* 11 Wright, Miller & Kane, *Federal Practice & Procedure* § 2854 (citing *Glick v. White Motor Co.*, 458 F.2d 1287 (3d Cir. 1972)).

Based on the language of Paragraph 6 of the Funding Agreement, which provides that "any interest otherwise recoverable shall begin to run on the date of payment at 5% per annum (simple)," TIG contends that post-judgment interest should be assessed on its portion of the Brooklyn Hospital settlement at 5% per annum. (Doc. 189 at 6–7.) Grinnell, however, argues that the federal statutory post-judgment interest rate should be applied to TIG's judgment award because the parties did not express their intent to stipulate to a different post-judgment rate through "clear, unambiguous, and unequivocal language." (Doc. 190 at 7.)

As both parties correctly note, the United States Court of Appeals for the Third Circuit has not addressed the issue of whether parties may contractually agree to a post-judgment interest rate different than that set forth in § 1961. (Doc. 189 at 5–6; Doc. 190 at 7.) However, several circuit courts have allowed parties to do so, provided that they have expressed their intent through "clear, unambiguous and unequivocal [contractual] language." *See Jack Henry & Assocs. v. BSC, Inc.*, 487 F. App'x 246, 259–60 (6th Cir.

---

[4] For the week ending January 18, 2013, this rate was 0.14%. *See* Selected Interest Rates (Weekly)—H.15, Board of Governors of the Federal Reserve System, *available at* http://www.federalreserve.gov/releases/h15.

7

2012) ("the federal rule applies unless the contract includes 'language expressing an intent that a particular interest rate apply to judgments or judgment debs' that is 'clear, unambiguous[,] and unequivocal.'") (citing *FCS Advisors, Inc. v. Fair Fin. Co.*, 605 F.3d 144, 148 (2d Cir. 2010)); *see also Kanawha-Gauley Cola & Coke Co. v. Pittston Minerals Grp., Inc.*, ___ F. App'x ___, 2012 WL 6622708, *6 (4th Cir. Dec. 20, 2012) (applying federal interest rate in absence of "clear, unambiguous, and unequivocal language" in parties' agreement); *In re Riebesell*, 586 F.3d 782, 794–95 (10th Cir. 2009).

TIG argues that Paragraph 6 of the Funding Agreement "clearly articulates the parties' intent" to apply a 5% per annum interest rate for any interest awarded because its language makes "no distinction between prejudgment and post-judgment interest." (Doc. 189 at 6–7.) Grinnell counters that because the parties did not distinguish between pre-judgment and post-judgment interest or reference post-interest judgment whatsoever, they have not exhibited "clear, unambiguous, and unequivocal" intent to contract around the federal statutory post-judgment interest rate. (Doc. 190 at 11–12.)

Assuming, *arguendo*, that Third Circuit jurisprudence permits parties to contractually agree to a post-judgment interest rate different than that set forth in § 1961, the Court finds that the parties have not demonstrated the intent necessary to do so here. Particularly persuasive, in the Court's view, are the decisions of several circuit courts that have determined that a contractual provision must explicitly refer to post-judgment interest in order to override § 1961. *Compare Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004) (applying federal rate where contractual language stated that a different interest rate would apply "from the date payment was due to the date payment is made") and *Jack Henry*, 487 F. App'x at 259–60 (holding that a provision stating "[a]mounts outstanding after the due date are subject to an interest charge to day of payment" was insufficiently clear to displace the federal rate), *with Hymel v. UNC, Inc.*, 994 F.2d 260, 265–66 (5th Cir. 1993) (finding contract language providing that "all past due interest and/or principal shall bear interest from maturity until paid, both before and after judgment" to be sufficiently clear). Therefore, TIG shall

8

receive post-judgment interest on $9,478,654.18[5] at a rate of 0.14%, to be computed daily, until the judgment is paid in full, and shall be compounded annually, as provided by 28 U.S.C. § 1961(b).[6]  *See Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d at 59, 63 (3d Cir. 1986) ("post-judgment interest under 28 U.S.C. § 1961 provides for post-judgment interest and that that interest should be calculated on the amount of the district court's judgment [ ] plus prejudgment interest.")

In sum, TIG's motion will be granted insofar as it requests the Court to amend its January 23, 2013 Order to declare that TIG owed no duty to idemnify Grinnell for the Brooklyn Hospital settlement and order Grinnell to reimburse the $7,840,699.69 paid by TIG in connection with the Brooklyn Hospital settlement, along with pre-judgment interest of $1,637,954.49 and post-judgment interest.  However, TIG's motion will be denied to the extent that it seeks the Court to impose 5% post-judgment interest. Grinnell will be ordered to reimburse TIG $7,840,699.69, along with $1,637,954.49 in pre-judgment interest, and pay 0.14% post-judgment interest on $9,478,654.18, to be computed daily and compounded annually, until the judgment is paid in full pursuant to 28 U.S.C. § 1961. These actions are consistent with the Court's January 23, 2013 Order entering judgment in TIG's favor on Counts I and II of its Amended Complaint.

## CONCLUSION

For the aforementioned reasons, TIG's Motion for Clarification of the Court's January 23, 2013 Order (Doc. 188) will be granted in part and denied in part.

An appropriate order follows.

| | |
|---|---|
| April 8, 2013 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo<br>United States District Judge |

---

[5] $7,840,699.69 + $1,637,954.49 = $9,478,654.18.

[6] 28 U.S.C. § 1961(b) provides that post-judgment interest "shall be computed daily to the date of payment . . . and shall be compounded annually."

9